**77 So.2d 28**

**George E. OATIS**

**v.**

**C. J. DELCUZE, and Mrs. Allie Gehlbach, divorced wife of Maurice Blache.**

**No. 41480.**

Dec. 13, 1954.

Clement F. Perschall, New Orleans, for appellants.

Ralph N. Jackson, New Orleans, for appellee.

LE BLANC, Justice.

On February 6, 1952, plaintiff, George E. Oatis, entered into an agreement with Delcuze Real Estate Company, selling agent, to purchase the property listed as 863 Roosevelt Place in New Orleans, owned by Mrs. Allie Gehlbach Blache, for $23,000 cash. The agreement provided for a deposit of 10% of the purchase price and the seller obligated herself to deliver to the purchaser a merchantable title. The offer was to remain binding, and irrevocable through February 7, 1952.

At the time the agreement was executed there was constructed on the property, and it is still located thereon, a house containing three apartments.

The deposit of $2,300 was made according to the terms of the agreement but when the time came to execute the deed, the purchaser agreed to accept title only upon the vendor furnishing a bond to secure him against disturbance in possession because of certain alleged zoning regulations with which the building failed to comply. The vendor refused to furnish such bond and this suit, for the recovery of the deposit, plus certain costs and expenses and also attorney's fees, resulted.

The suit is directed against the vendor, Mrs. Allie Gehlbach, divorced wife of Maurice Blache, and C. J. Delcuze, the real estate agent who represented her in the agreement to purchase.

Plaintiff alleged that under a zoning ordinance of the Commission Council of the City of New Orleans, certified copy of which is annexed to his petition, certain properties are classified as "A" Residential, and the erection or maintenance of any except one or two family residences therein is prohibited. He further averred that the property he agreed to buy from the defendant, Mrs. Allie Gehlbach Blache, comes under that classification and because the construction erected on it is a frame residence containing three separate and distinct apartments, this constitutes an existing violation of the ordinance referred to and makes the title one that is suggestive of litigation.

Plaintiff made other allegations to the effect that the building also fails to meet

other requirements of the ordinance relating to its location and with respect to the quantity of space that has to be left on the property for rear and side yards.

The demand is for the return of the deposit of $2,300 and in addition, the sum of $292.50 for costs and expenses incurred in connection with the agreement to purchase, and also the sum of $700 for attorney's fees. These items, amounting to the sum of $3,292.50, he alleged he is entitled to recover under a clause in the agreement which obliges either party who fails to comply with its terms to pay all fees and costs incurred in enforcing collection and damages. Judgment is prayed for against both defendants, in solido.

Defendants filed exceptions of no right and no cause of action and upon their being overruled they filed a joint answer in which they admit the execution of the agreement to purchase but generally deny all the other allegations of plaintiff's petition. Defendant Mrs. Blache, further answering, alleged that these apartments were in existence on the property prior to the adoption of the zoning ordinance referred to in plaintiff's petition, and that on the day fixed for passing the act of sale she advised plaintiff that she could furnish affidavits to that effect but he refused to accept such evidence. Further alleging that plaintiff had breached his contract and that under its terms his deposit should be forfeited, she so demands, as plaintiff in reconvention,

and further asks for $700 to pay the fees of counsel she was forced to employ.

Defendant C. J. Delcuze also assumed the position of a plaintiff in reconvention and averred that he was entitled to his agent's commission under the terms of the purchase agreement. He asks for judgment against the plaintiff in the sum of $1,020 for the commission he claims and the further sum of $350 as attorney's fees.

After trial in the lower court there was judgment in favor of the plaintiff and against both defendants, in solido, in the sum of $2,942.50 and both demands in reconvention were rejected. On rehearing the district judge amended the judgment, casting both defendants, in solido, in the full sum of $2,300 and casting the defendant, Mrs. Allie Gehlbach, divorced wife of Maurice Blache, in the additional sum of $292.50. The judgment is not itemized, but assuredly the $2,300 for which both defendants were cast, in solido, represents the deposit that had been made by the plaintiff in the purchase agreement. Apparently the $292.50 includes costs, and expenses, incurred by the plaintiff with the exception of the attorney's fees which evidently had been previously allowed. Defendant appealed and plaintiff has answered praying for an amendment so as to be awarded $700 for the attorney's fees demanded.

The ordinance with which we are concerned in the case is Ordinance No. 11,302, Commission Council Series, as

amended, of the City of New Orleans, adopted June 1, 1929 and approved June 6, 1929. Concededly the building on the property involved in this case consists of three separate and distinct apartments and does not conform to the provisions of the zoning ordinance. However, as admitted by counsel for plaintiff, the mere existence of the zoning regulations under the ordinance does not of itself create an encumbrance on the title to the property. It is the violation of the restrictions imposed by the ordinance that affects the merchantability of the title. Obviously if the non-conforming building was erected on the property, or some non-conforming feature was added to it, prior to the effective date of the zoning ordinance, its provisions do not apply. That is made plain by the terms of the ordinance itself Sec. 10(b) of which reads as follows:

"The lawful use of a building, or portion thereof, existing at the time of the passage of this ordinance may be continued except as hereinafter provided in paragraphs (c) and (d), although such lawful existing use of said building or portion thereof does not conform to the provisions hereof, provided, that the lawfully existing non-conforming use shall not be expanded so as to encroach into any other portion of the building, and provided further, that no structural alterations except those required by law or ordinance shall be made in the non-conforming building or non-conforming part of a building."[1]

■ The question to be resolved then, in cases of this kind is one that relates to the time when the non-conforming building was constructed. If it, or its non-conforming features existed prior to the date of the ordinance, the purchaser acquiring from the owner obtains a title that is free of the encumbrances which may result and is protected against the penalties therein provided. On the other hand, if the non-conforming building was erected after the passage of the ordinance, there resulted a violation of its terms which materially affects the title to the property and the policy of the law, as announced by the courts, is not to compel a person to purchase under an agreement for the sale of real property where there is a substantial doubt as to the title or where the title is in such condition as to expose the purchaser to litigation. See Moyer v. De-Vincentis Const. Co., 107 Pa.Super. 588, 164 A. 111, a case bearing a close similarity to this one. This Court applied that principle of law in the case of Praegner v. Kinnebrew & Ratcliff, 156 La. 132, 100 So. 247, 249. It is true that the purchaser in that case refused to take title to the property under his agreement to purchase for reasons that are different from those that are presented in this case but the Court, finding that the title as it existed might invite litigation, relieved him from his obligation stating that he

1. The exceptions provided in paragraphs (c) and (d) have no application to this case.

"agreed to purchase the property and not the property plus a probable lawsuit."

The law of this case therefore appears to be well settled and its decision has to rest on the issue of fact relating to the time when the non-conforming building was erected on the property. If it was *before* June 6, 1929, the effective date of the zoning ordinance, the title to the property was not affected by its provisions, if it was *after* that date then it was constructed in violation of the terms of the ordinance and for that reason the title was not marketable.

There is very little proof found in the record on this issue of fact. The only public records concerning the construction of the building were produced by the plaintiff and those consist of applications made to, and permits granted by the Sewerage and Water Board of New Orleans to install plumbing fixtures in the building. One of these is dated as late as November 1938, and it included the moving of two fixtures to a new location and the addition of four new bathroom and kitchen fixtures in the basement. The defendants apparently made no effort to locate any records nor to explain the installation of these new fixtures in 1938. The only proof they introduced was the testimony of a witness by the name of R. F. Mestayer, who is engaged in the business of selling lumber and building supplies and who recalled having known Mrs. Blache since probably 1930 or 1931 when she began buying materials from him. This witness' testimony is very vague and indefinite and it certainly establishes no proof whatever that the building was constructed prior to 1929.

The defendant Mrs. Blache had lived in the house for more than thirty years and she must have known, better than anyone else, whether the building was made into a three apartment residence before or after 1929 and she did not testify in the case. Moreover, despite the fact that by stipulation, the case was left open for three weeks to give her and her daughter, who both live in New Jersey, the opportunity of supplying such proof by affidavits, they failed to do so. It seems clear that the presumption that testimony which a party fails to produce under such circumstances would be unfavorable, has to be applied in favor of the plaintiff in this case.

There seems to be no dispute about the liability of the party failing to comply with the terms of the purchase agreement for fees and damages incurred in enforcing collection. The parties apparently agree that attorney's fees are included since both are demanding them.

The plaintiff's claim for actual expenses, including examination of title, survey, mortgage and other certificates, all amounting to $292.50, is not questioned, and since both sides are demanding attorney's fees in the same amount, we take it that liability is conceded on that item also. The demand for attorney's fees is $700 which we believe to be a bit high. The trial judge apparently had allowed $350. Why he dis--

allowed the fee altogether on rehearing is not shown. In view of the added work entailed by the attorney in presenting the case on this appeal, we think that an award of $500 is fair and reasonable.

For the reasons stated it is ordered that the judgment appealed from be amended by increasing the amount awarded to the plaintiff against the defendant, Mrs. Allie Gehlbach Blache, to the sum of $500 for attorney's fees, and that as thus amended it be affirmed.

HAMITER, J., did not participate.